**CONSOLIDATED ALUMINUM CORPORATION, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

No. 3–83–0892.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 15, 1984.

Donald C. Winson, Pittsburgh, Pa., Lon P. MacFarland, Columbia, Tenn., for plaintiff.

Herbert S. Sanger, Jr., General Counsel, James E. Fox, Assoc. Gen. Counsel, Robert E. Washburn, Peter K. Shea, TVA, Knoxville, Tenn., for defendant.

MEMORANDUM

WISEMAN, Chief Judge.

Before this Court are cross motions for summary judgment. Both sides agree that the issue concerns contract construction and thus can be decided as a matter of law. The dispute between Consolidated Aluminum Corporation [Consolidated] and Tennessee Valley Authority [TVA] centers upon the alleged overpayment by Consolidated of its electric bill. Consolidated maintains that TVA has misinterpreted cer-

tain contract and rate schedule provisions contained or incorporated in the three electric power contracts between the two parties.[1] Consolidated claims that as a result of the misinterpretation, TVA erroneously applied the "minimum billing demand formula" from a rate schedule to the *aggregate* contract demand under all of Consolidated's power agreements with TVA, rather than to the individual contract demand under each of the three power agreements. Consolidated argues that at stake are more than two million dollars that it has paid under protest to TVA. TVA asserts that it has not overbilled Consolidated and that Consolidated's claim is based on a mischaracterization of the "minimum billing demand" provision as a "minimum bill" provision.

In order to decide the motions before it, this Court must scrutinize the language of the pertinent provisions in the power contracts and rate schedules between the parties. In order to do that certain basic concepts and terms of art used in the electric utility industry must be understood. First, a power bill for an industrial customer such as Consolidated consists of several possible components—an energy charge, a demand charge, a minimum bill charge, and a late payment charge (if applicable). *Mobil Oil Corp. v. Tennessee Valley Authority*, 387 F.Supp. 498, 501–02 (N.D.Ala.1974). The "energy charge" is the amount charged for actual use of electric energy during the month. *Id.* at 502. This amount is not contested between the parties. The "demand charge" is the amount based on "billing demand" which is usually "the customer's highest *actual* demand on the system's capacity during the month." The purpose of the demand charge is to recoup the fixed costs related to the investment of the power supplier in its electrical system. *Id.* at 502. It is the "demand charge" component that is in dispute be-

tween the instant parties. The dispute centers upon how the "billing demand" was calculated—i.e., whether the minimum billing demand formula applied to the aggregate demand or separately to the individual demand under each contract. The "minimum bill charge" is "the lowest amount to which a customer's bill may fall ... This minimum must be paid in each billing period of the customer's contract, whether or not any service is actually taken." *Id.* Thus, the bill that an industrial electric user receives consists of the combination of an energy charge relating to the actual use of electric power and a demand charge relating to its demand of power vis-a-vis the capacity of the supplier, or, if the combination of those two charges falls short of the minimum bill charge, the customer is charged the minimum bill amount. *Id.*

Section 5 of the contract between TVA and Consolidated, captioned *Determination of Billing Amounts*, addresses the determination of both the energy charge and the demand charge. In laymen's terms, determination of the "energy charge" is done simply by measuring the amount of energy delivered. Determination of the "demand charge," the charge disputed in the instant case, is a bit more complicated. Section 5 in pertinent part states:

> The demands established ... shall be determined monthly in the manner provided in this section ...
>
> (b) Company's (Consolidated's) 'total demand' for each billing period shall be determined in the same manner as prescribed for determining the demand for any month under the *Determination of Demand* section of the attached rate schedule ...
>
> (d) The total demand for each billing period ... shall be the billing demand.

The *Determination of Demand* provision incorporated in section 5(b) above states:

---

**1.** Consolidated and TVA have had power supply contracts since 1963. The contracts in question are the 1973, 1976, and the 1978 contracts. The contracts overlap in that each provides for supplying electricity into the term of the succeeding contract which is presumably negotiated with

the previous agreements in mind. The rate schedules referred to are those issued periodically by TVA that apply to all power contracts with its various customers. The disputed provisions are the same in all three contracts and all the applicable rate schedules.

Distributor (TVA) shall measure the demand in kilowatts of all customers having loads in excess of 50 kilowatts. The demand for any month shall be ... used as the billing demand except that ... the billing demand for any month shall in no case be less than the sum of (1) 40 percent of the first 5,000 kilowatts, (2) 70 percent of the next 45,000 kilowatts, and (3) 90 percent of all kilowatts in excess of 50,000 kilowatts....

The 40–70–90 percent formula contained in the last part of this provision is known as a "ratchet formula" which in this case functions as a minimum billing demand formula because it establishes a *minimum billing demand* for each month. Thus, the determination of "billing demand" is a process by which one first determines whether the ratchet formula applies to establish a minimum billing demand as calculated under the 40–70–90 percent formula. If the ratchet formula does not apply, the billing demand is the actual demand under both the *Determination of Demand* provision and section 5 of the contract. The billing demand, whether it is the minimum billing demand or some other demand figure, is multiplied by a demand charge factor to arrive at the demand charge.

### Positions of the Parties

Consolidated maintains that in computing the amount of its bill the ratchet formula applies separately to the billing demand of each of the three contracts. Applying the ratchet formula separately results in less of the billing demand being affected by the ninety percent level of the ratchet formula than would be the case if the ratchet were applied to the aggregate of the billing demands for the three contracts.[2] The result, Consolidated claims, is an inflated billing demand which in turn inflates the demand charge component of the billing amount resulting in an overbilling by TVA. Consolidated bases its contention that the ratchet formula applies separately to the billing demands of the three contracts on the belief that the ratchet formula constitutes a "minimum bill" provision which in turn applies to the "exception" clause of the following crucial provision of section 5(d):

> (d) ... The billing demand [from the contracts in force] ... taken during any billing period shall each remain combined for purposes of billing under the attached rate schedule rather than each being divided among the 1973 and 1976 Contracts and this contract [the 1978 contract] *except* that *for calculations required to determine the application of minimum bill provisions the billing demand for ... any billing period shall each be divided among the 1973 and 1976 Contracts and this contract* in proportion to the respective amounts of firm power available under the respective con-

**2.** For example, for the month of October 1981, when the ratchet is applied to the aggregate contract demand (i.e., 254,000 kW) called for by the 1973, 1976, and 1978 contracts, the resulting minimum billing demand is as follows:

| | | |
|---|---|---|
| 40% of the first 5,000 kW | = | 2,000 kW |
| 70% of the next 45,000 kW | = | 31,500 kW |
| 90% of the remaining 204,000 kW | = | 183,600 kW |
| | | 217,100 kW |

If the demand under each of the contracts were separated as Consolidated contends, the minimum billing demand would be computed as follows:

| | 1973 Contract (109,000 kW) | 1976 Contract (70,000 kW) | 1978 Contract (75,000 kW) |
|---|---|---|---|
| 40% of first 5,000 kW | 2,000 kW | 2,000 kW | 2,000 kW |
| 70% of next 45,000 kW | 31,500 kW | 31,500 kW | 31,500 kW |
| 90% of remaining kW | 53,100 kW | 18,000 kW | 22,500 kW |
| | 86,600 kW | 51,500 kW | 56,000 kW |

Total 194,100 kW

Thus, for this one month period, depending upon whether billing demand was aggregated or

tracts during the billing period. (emphasis added).

Thus, Consolidated contends that in determining whether to apply the ratchet formula, which it maintains is a minimum bill provision, the "exception" clause of section 5(d) dictates that the billing demand be separated among the three power contracts.

TVA, on the other hand, maintains that the ratchet formula is not a "minimum bill" provision, rather it is a "minimum *billing demand*" provision, and thus is not affected by the "exception" clause of section 5(d) concerning separation of billing demand for minimum bill purposes. Also, TVA expresses some dismay as to how Consolidated can maintain that the ratchet provision is a minimum bill provision in light of the section of the rate schedule entitled *Minimum Bill*[3] which addresses the calculation of the minimum bill charge.

## Discussion

Both parties agree that the disputed contractual language is unambiguous and that the matter is proper for summary judgment. Once again, the focus of the dispute is the construction of the following contractual provision:

5(d) ... The billing demand for ... any billing period shall ... remain combined for purposes of billing under the attached rate schedule rather than each being divided among the 1973 and 1976

Contracts and this contract [the 1978 contract] except that for calculations required to determine the application of minimum bill provisions the billing demand ... shall each be divided among the 1973 and 1976 Contracts and this contract.

The first clause of this provision clearly establishes that the billing demands of the three contracts will be aggregated for billing purposes. The second clause, beginning with "except," just as clearly states that the billing demands of the three contracts will remain separate when determining if minimum bill provisions apply. The issue is whether the ratchet formula is a minimum bill provision. The Court holds that it is not. The ratchet formula establishes a minimum billing demand below which billing demand cannot fall; it does not establish a minimum dollar amount below which the monthly bill may not fall. The consequences of having the "minimum billing demand" provided by the ratchet formula is that whenever the term "billing demand" is used in the contract, one must be aware that there is an established minimum for that billing demand that must be considered before applying the billing demand to any further computation under the power agreement. Basically, billing demand, which could be the actual demand or the minimum billing demand—whichever is greater, is used in two computations. First, billing demand is used as part of the determination of the "demand charge" a

separated, there was a difference of 23,000 kW (217,100–194,100) of billing demand.

**3.** The contents of the Minimum Bill provision are not in dispute. The applicable part of the provision states: "The monthly bill ... shall not be less than the base demand charge ... applied to the higher of (a) the currently effective contract demand or (b) the highest demand established during the preceding 12 months." The parties, however, do dispute whether this provision is the only "minimum bill" provision in the agreement between the parties. Consolidated argues that the language of the "exception" clause in 5(d), which uses the words "minimum bill provisions," indicates that more than one minimum bill provision is contained in the argument. Of course, Consolidated argues that the ratchet formula is one of the "other" minimum bill provisions. TVA argues that since the

Minimum Bill section contains three paragraphs it would be correct to refer to "minimum bill provisions" as meaning the one section of the rate schedule. Furthermore, TVA argues that the 5(d) "minimum bill provisions" language could not refer to the ratchet formula because the formula did not exist at the time of the contract. Consolidated, however, maintains that the ratchet formula in question has the purpose and effect of a minimum bill provision because it establishes a minimum demand level for purposes of billing. TVA counters by saying that the ratchet provides a floor below which billing demand will not fall, but that this "floor" is used not to compute the minimum bill, rather is used to determine whether the minimum bill provision from the rate schedule applies to the particular billing period.

component of the electric bill. This is what is referred to in section 5(d) as determination of billing demand "for purposes of billing," and for this purpose the billing demands are aggregated. Second, billing demand is part of the calculation to determine whether the demand and energy charge components are so deficient as to invoke the minimum bill provision. This is what is referred to in the section 5(d) "exception" clause as "calculations required to determine the application of minimum bill provisions." For these calculations, the billing demands are separated among the various power contracts, but it is important to remember that the separate billing demands may be either the individual minimum billing demand determined through the ratchet formula or some other billing demand figure. In either role, the ratchet formula, as a matter of the unambiguous contractual language, is a minimum demand provision, not a minimum bill provision.

The operation of the minimum billing demand provision/ratchet formula does not lend support to Consolidated's argument. In short, any determination of billing demand must first begin with deciding whether the minimum billing demand applies. The language of the "exception" clause of section 5(d) instructs that the billing demand be viewed separately under each individual contract in deciding whether to apply the minimum bill, but here again the separate billing demand may be the actual demand or may be the minimum billing demand as computed under the ratchet formula. Because the minimum billing demand provision is used, when applicable, in determining the propriety of invoking the minimum bill provision, this Court is not persuaded that the minimum billing demand provision/ratchet formula also operates as a minimum bill provision. Thus, the Court holds that the 40–70–90 percent ratchet formula establishes a "minimum provision," but it establishes a "minimum billing demand provision" not a "minimum bill provision." The Court finds that when computing billing demand for billing purposes the ratchet formula applies to the aggregate of the billing demands of all the contracts. Therefore, it follows that the "exception" clause of section 5(d) does not apply to the separate billing demands under the three contracts when determining total billing demand for billing purposes. Thus, TVA did not wrongfully apply the ratchet demand provision to the aggregate of billing demand when it was computing the amount of Consolidated's electric bill. As a result, Consolidated was not overbilled as it claims. Accordingly, plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is granted.